1
2
3
4
5
6
7               IN THE UNITED STATES DISTRICT COURT
8            FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10
11

SCOTT RIEGER,                          Case No.: 3:13-0749-JSC

        Plaintiff,                     **ORDER RE: WELLS FARGO'S
                                       NOTICE OF REMOVAL AND
        v.                             MOTION TO DISMISS**

WELLS FARGO BANK, NATIONAL
ASSOCIATION; WELLS FARGO
HOME MORTGAGE, INC.; CAL-
WESTERN RECONVEYANCE
CORPORATION

        Defendants.

        Pending before the Court are Defendants' Notice of Removal (Dkt. No. 1), Motion to

Dismiss (Dkt. No. 8), and Request for Judicial Notice (Dkt. No. 9).  Defendants argue the

Court has subject matter jurisdiction because Defendant Cal-Western Reconveyance

Corporation ("Cal-Western") was fraudulently joined and its citizenship should be ignored

for purposes of determining diversity jurisdiction.  Defendants also argue that Plaintiff Scott

Rieger ("Plaintiff"), in his pro se complaint, fails to state a claim for which relief can be

1   granted.  Plaintiff did not appear at the time set for the hearing on these motions on April 18,

2   but did appear an hour later.[1]

3          After carefully considering the pleadings filed by the parties, the Court concludes that

4   Cal-Western is a sham defendant and therefore the Court has diversity jurisdiction.  Further,

5   the Court GRANTS Defendants' Motion to Dismiss with prejudice as to the UCC claims;

6   however, the Court GRANTS Plaintiff leave to amend to add new claims.

7                                    **FACTUAL BACKGROUND**

8          The relevant facts taken from Plaintiff's Complaint, documents incorporated into the

9   Complaint by reference, and documents of which the Court takes judicial notice, are as

10  follows.[2]

11         In July 2005, Plaintiff secured a loan of $525,000.00 from World Savings Bank, FSB,

12  ("WSB") a federal savings bank chartered by the Office of Thrift Supervision ("OTS").

13  (Dkt. No. 9, Ex. A.)  The loan was secured by a deed of trust ("the Deed") recorded against

14  2697 Parkside Drive, Fremont CA, 94536 (the "Property") and was memorialized by a

15  promissory note ("Note").  (Dkt. No. 9, Exs. A- B.)

16         WSB changed its name to Wachovia Mortgage, FSB ("Wachovia") in November,

17  2007.  (Dkt. 9, Ex. D.)  Effective November 1, 2009, Wachovia converted to a national bank

18  named Wells Fargo Bank Southwest, National Association, which merged with and into

19  Wells Fargo Bank, National Association ("Wells Fargo") on the same day.  (Dkt. No. 9, Ex.

20  F.).

21         Plaintiff failed to make the payment due in March, 2011 and defaulted on the loan.

22  (Dkt. 9, Ex. G.)  Eleven months later, Defendant Cal-Western sent Plaintiff a Notice of

23

---

24  [1] The Court takes judicial notice of system-wide BART delays on the morning of April 18,
    2013.  *See* Federal Rule of Evidence 201(b).

25  [2] The Court GRANTS Defendants' Request for Judicial Notice (Dkt. No. 9)  of Exhibits A-D,

26  F-J as the documents are "generally known within the trial court's territorial jurisdiction" or
    "can be accurately and readily determined from sources whose accuracy cannot reasonably be

27  questioned."  Federal Rule of Evidence 201(b); *see also Coto Settlement v. Eisenberg*, 593
    F.3d 1031, 1038 (9th Cir. 2010) (finding that judicial notice is also appropriate for "materials

28  incorporated into the complaint.").

1    Default ("Notice") and recorded it with the Alameda County Recorder, quantifying the

2    delinquency at $33,844.34.  (*Id.*)  The Notice, which identified Cal-Western as the trustee,

3    instructed Plaintiff to contact Wells Fargo, care of Cal-Western, if he wanted to learn the

4    amount he must pay to stop the foreclosure.  (*Id*. at 1-2.)  A Notice of Trustee's Sale was

5    recorded with the Alameda County Recorder five months later.  (Dkt. No. 9, Ex. H.)  That

6    September, Plaintiff filed a bankruptcy petition, which was subsequently dismissed.  (Dkt.

7    No. 9, Exs. I, J.)

8        On January 22, 2013, Plaintiff filed this suit for wrongful foreclosure against

9    Defendants Cal-Western and Wells Fargo.  (Dkt. No. 1, Ex. A.)  Plaintiff alleges that

10   Defendants failed to comply with "California Statutes, Commerce Code, Section 5, Uniform

11   Commercial Code, § 5101 et seq. ("UCC") as relating to his Note resulting in wrongful

12   foreclosure and irreparable harm.  The defendants do not and did not have a right to sell the

13   property."  (Dkt. No. 1, Ex. A at ¶ 9.)

14       Wells Fargo filed a timely Notice of Removal pursuant to 28 U.S.C. § 1332, asserting

15   federal subject matter jurisdiction based on diversity of citizenship.  (Dkt. No. 1.)  The

16   removal notice included a Declaration of Non-Monetary Status by Cal-Western (Dkt. No. 1,

17   Ex. B), which Plaintiff challenged in his "Response" filed 14 days later.  (Dkt. No. 13.)  Cal-

18   Western consented to removal.  (Dkt. No. 3.)

19       Now before this Court are Defendants' Notice of Removal (Dkt. No. 1) and Motion to

20   Dismiss (Dkt. No. 8).[3]  Defendants' Motion to Dismiss argues that Plaintiff's Complaint fails

21   on any possible basis suggested in the Complaint, including any claims based on the UCC,

22   Truth in Lending Act ("TILA"), and Real Estate Settlement Procedures Act ("RESPA").

23   Plaintiff responds that his "claim is based on violations of the UCC," and not on TILA,

24   RESPA, or California's non-judicial foreclosure statutes.  (Dkt. No. 16 at 4.)  He purports to

25   not be raising a "show me the note" argument; rather, he alleges that Defendants lacked the

26   authority to foreclose on the Property.  (Dkt No. 16 at 7 ("Plaintiff's claim is founded in

27

28   [3] All parties agreed to proceed before a U.S. magistrate judge in accordance with 28 U.S.C. § 636(c).  (Dkt. Nos. 5, 6, 12.)

United States District Court
Northern District of California

1   Defendants having failed or refused to offer proof of authority or status as holder, owner or
2   agency under the note.").)
3                                           **DISCUSSION**
4   **I.      SUBJECT MATTER JURISDICTION**
5          **A.      Legal Standard**
6          Although Plaintiffs do not object to Defendants' removal, the Court has an
7   independent obligation to satisfy itself that it has federal subject matter jurisdiction whenever
8   a case is removed to federal court. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir.
9   2004); *see* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the
10  district court lacks subject matter jurisdiction, the case shall be remanded to state court.");
11  *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-
12  matter jurisdiction, the court must dismiss the action."). Courts are to "[s]trictly construe the
13  removal statute against removal jurisdiction" such that "[f]ederal jurisdiction must be
14  rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles,
15  Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Given the "strong presumption" against removal
16  jurisdiction, the defendant always bears the burden of establishing that removal is proper. *Id.*
17         A defendant may remove any civil action from a state court to a federal court if
18  original jurisdiction would have existed at the time the complaint was filed. 28 U.S.C. §
19  1441(a); see also *Strotek Corp. v. Air Transp. Ass'n. of Am.*, 300 F.3d 1129, 1131 (9th Cir.
20  2002) (Federal diversity jurisdiction "is determined (and must exist) as of the time the
21  complaint is filed and removal is effected."). Defendants removed this action on the basis of
22  diversity jurisdiction. The federal diversity jurisdiction statute provides that the "district
23  courts…have original jurisdiction of all civil actions where the matter in controversy exceeds
24  the sum or value of $75,000" and where all parties to the action are "citizens of different
25  states." 28 U.S.C. § 1332(a).
26         "[O]ne exception to the requirement of complete diversity is where a non-diverse
27  defendant has been fraudulently joined." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061,
28  1067-68 (9th Cir. 2001); *see, e.g.*, *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d

United States District Court
Northern District of California

United States District Court
Northern District of California

1005, 1008 (N.D. Cal. 2001) ("A district court may disregard a non-diverse party named in the state court complaint and retain federal jurisdiction if the non-diverse party is joined as a sham or if the joinder is fraudulent."). "Fraudulent joinder is a term of art. If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir. 1987); *see also Sun v. Bank of Am. Corp.*, 2010 WL 454720, at *3 (C.D. Cal. 2010) ("[I]n the Ninth Circuit, a non-diverse defendant is deemed to be fraudulently joined if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned."). District courts will likewise ignore the citizenship "of nominal or formal parties who have no interest in the action and are merely joined to perform the ministerial act of conveying the title if adjudged to the complainant." *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 873 (9th Cir. 2000) (internal citations and quotation marks omitted).

There is a "general presumption against fraudulent joinder," and a defendant's burden of proof is "heavy." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009). The removing party "must negate every possible scenario within the ambit of a well-pled claim." *Iniguez v. Vantium Capital, Inc.*, No., 2013 WL 1208750, at *2 (N.D. Cal. Mar. 25, 2013). A defendant "is entitled to present the facts showing the joinder to be fraudulent." *McCabe*, 811 F.2d at 1139. "The district court, however, must resolve all disputed questions of fact in favor of the Plaintiff." *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998).

"A court may look beyond the pleadings to determine if a defendant is fraudulently joined, but a plaintiff need only have one potentially valid claim against a non-diverse defendant to survive a fraudulent joinder challenge." *Sun*, 2010 WL 454720, at *3 (internal citations and quotations omitted). "Accordingly, a defendant seeking removal based on an alleged fraudulent joinder must do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant." *Id.* Rather, "[r]emand must be

granted unless the defendant shows that the plaintiff would not be afforded leave to amend his complaint to cure [the] purported deficiency." *Id.* (internal quotations and citations omitted); *see also Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir.1992) ("We do not decide whether the plaintiff will actually or even probably prevail on the merits, but look only for a possibility that he may do so."). "[B]ecause the expressed standard for fraudulent joinder is whether there is any possibility that a claim can be stated against the allegedly sham defendants, the standard is necessarily similar to that of motions to dismiss."[4] *Knutson v. Allis-Chalmers Corp.*, 358 F. Supp. 2d 983, 995 (D. Nev. 2005) (internal citations and quotation marks omitted).

Pro se pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Indeed, the Supreme Court has held that allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

**B.       The Court has Subject Matter Jurisdiction**

The Court must first determine whether it has subject matter jurisdiction based on diversity of citizenship. Because this case arises from Plaintiff's default on a loan of $525,000.00 (Dkt. No. 9, Ex. A.), the $75,000 amount in controversy requirement is satisfied. *See* 28 U.S.C.A. § 1332(a); *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977) (noting that in actions that seek declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation). Accordingly, jurisdiction hinges on the existence of complete diversity of the parties.

Plaintiff alleges he is a citizen of California. (Dkt. No. 1, Ex. A at ¶ 5.) Wells Fargo, a national bank, claims to be a citizen of South Dakota, where its main office is located. (*See* Dkt. No. 1 at 2-3, Ex. D). This Court has previously held that Wells Fargo is a citizen of

---

[4] There are two exceptions: "(1) this Court may pierce the pleadings to make factual determinations, and (2) the Court may not make final determinations with regard to questions of state law that are not well-settled." *Knutson*, 358 F. Supp. 2d at 995.

United States District Court
Northern District of California

1    South Dakota and not of California. *See Flores v. Wells Fargo Bank, N.A.*, 2012 WL 832546

2    (N.D. Cal. Mar. 12, 2012). Neither party contests that Cal-Western is a citizen of California.

3    (*See* Dkt. No. 1 Ex. A, ¶ 8). As such, Cal-Western defeats complete diversity.

4          Defendants argue, however, that Cal-Western "has been fraudulently joined in this

5    action" and its citizenship should be ignored for purposes of determining diversity

6    jurisdiction. (Dkt. No. 1 at 5.)[5] According to Defendants, Plaintiff fails to state a cause of

7    action against Cal-Western because he did not allege "any actual wrongful conduct on the

8    part of Cal-Western." (Dkt. No. 1 at 6.) Defendants add that, "even if plaintiff had alleged

9    that Cal-Western violated specific provisions of the UCC, any such violations cannot support

10   a claim for wrongful foreclosure." (*Id.*) Finally, Defendants assert that as trustee, Cal-

11   Western is immune from liability because it acted in good faith on information provided by

12   the lender, Wells-Fargo. (Dkt. No. 1 at 7.)

13         Defendants must show that it is "well-settled" and "obvious" that there is no

14   possibility of Plaintiff succeeding against Cal-Western on any of the causes of action. *See*

15   *McCabe*, 811 F.3d at 1339. For the reasons explained below, Defendants have satisfied this

16   burden.

17         Plaintiff alleges that Defendants failed to comply with "California statutes, Commerce

18   Code, Section 5, Uniform Commercial Code ("UCC") § 5101 et seq. as relating to his Note

19   resulting in wrongful foreclosure and irreparable harm. The defendants do not and did not

20   have a right to sell the property." (Dkt. No. 1, Ex. A at ¶ 9.) In particular, he argues that

21   Defendants "failed to show under UCC § 3412 that they were entitled to enforce the note."

22   (Dkt. No. 1, Ex. A at ¶ 30.) Defendants respond that "the purported wrongs alleged by

23   plaintiff, all violations of the UCC, cannot serve as a basis to allege wrongful foreclosure or

24   quiet title or for plaintiff to seek any other equitable relief." (Dkt. No. 1 at 6.) Plaintiff

25   nonetheless insists that the UCC is the governing statute. Plaintiff is incorrect.

26

27

28   _____
     [5] Wells Fargo filed the original Notice of Removal (Dkt. No. 1), which Cal-Western joined
     (Dkt. No. 3). As such, Defendants are referred to collectively.

1    It is well-established that California's nonjudicial foreclosure statutes, California Civil

2  Code sections 2924 through 2924(k), exclusively govern nonjudicial foreclosures. *Moeller*

3  *v. Lien*, 25 Cal. App. 4th 822, 831 (1994).  In *Moeller*, the court considered whether

4  California Civil Code section 3275, "Relief in case of forfeiture," could be "applied against a

5  bona fide purchaser for value at a nonjudicial foreclosure sale."  25 Cal. App. 4th at 826.

6  The court reasoned that Cal. Civ. Code §§ 2924-2924(k) "provide a comprehensive

7  framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale

8  contained in a deed of trust."  *Id.* at 834.  The court added:

9

10         The comprehensive statutory framework established to govern nonjudicial
           foreclosure sales is intended to be exhaustive.  It includes a myriad of rules
11         relating to notice and right to cure.  It would be inconsistent with the
           comprehensive and exhaustive statutory scheme regulating nonjudicial
12         foreclosures to incorporate another unrelated cure provision into statutory
           nonjudicial foreclosure proceedings.
13

14  *Id.* (internal citations omitted); *see also Hague v. Wells Fargo Bank, N.A.*, 2011 WL

15  3360026, at *3 (N.D. Cal. Aug. 2, 2011) (following *Moeller*); *Germon v. BAC Home Loans

16  Servicing, L.P.*, 2011 WL 719591, at *2 (S.D. Cal. Feb. 22, 2011) (same); *Canales v. Fed.

17  Home Loan Mortg. Corp.*, 2011 WL 3320478, at *6 (C.D. Cal. Aug. 1, 2011) (following

18  *Moeller* and holding that therefore UCC and Corporations Code do not apply to nonjudicial

19  foreclosure).

20    Accordingly, California federal courts refuse to apply the UCC, including UCC

21  § 3301, to nonjudicial foreclosures.  *See e.g.*, *Padayachi v. IndyMac Bank*, 2010 WL

22  4367221, at *3 (N.D. Cal. Oct. 28, 2010) ("[A]lthough Article 3 of the UCC governs

23  negotiable instruments, it does not apply to nonjudicial foreclosure under deeds of trust.").

24  For example, in *Padayachi,* the court held that "[t]here is no requirement that any of the

25  entities physically possess the note secured by the deed of trust or that any of them be a

26  person entitled to enforce the note under [UCC] § 3301."  2010 WL 4367221, at *3 (internal

27  quotation marks omitted);  *see also Putkkuri v. ReconTrust Co.*, 2009 WL 32567, at *2 (S.D.

28

1    Cal. Jan. 5, 2009) ("Pursuant to section 2924(a)(1) of the California Civil Code, the trustee

2    of a Deed of Trust has the right to initiate the foreclosure process.  Production of the original

3    note is not required to proceed with a non-judicial foreclosure.") (internal citation omitted);

4    *Pagtalunan v. Reunion Mortgage Inc.*, 2009 WL 961995, at *2 (N.D. Cal. Apr.8, 2009)

5    ("California law does not require possession of the note as a precondition to non-judicial

6    foreclosure under a deed of trust.").

7           Here, Plaintiff alleges that Defendants wrongfully foreclosed on the Property because

8    they failed to establish "under UCC § 3412 that they were entitled to enforce the note."

9    (Dkt. No. 1, Ex. A at ¶ 30.)  Plaintiff's claim obviously fails because, as explained above,

10   Article 3 of the UCC "does not apply to nonjudicial foreclosure under deeds of trust."

11   *Padayachi*, 2010 WL 4367221, at *3.  Further, Plaintiff does not identify, and this Court is

12   not aware of, any claim under the nonjudicial foreclosure statutes that Plaintiff may bring

13   against Cal-Western for its alleged failure to possess the Note.  Moreover, Plaintiff did not

14   identify any other facts in his Opposition that could be alleged against Cal-Western.  In fact,

15   he did not address Cal-Western's conduct at all in his Opposition but instead focused

16   exclusively on Wells Fargo.  Accordingly, based on the facts alleged in the Complaint, no

17   cause of action is possible against Cal-Western and this Court therefore finds that Cal-

18   Western was fraudulently joined as a sham defendant.  *See Fernandez v. Wells Fargo Bank,*

19   *N.A.*, 2012 WL 5350256, at *7-8 (N.D. Cal. Oct. 29, 2012) (finding Cal-Western

20   fraudulently joined where it was "obvious" that California's nonjudicial foreclosure statutes

21   imposed no duty on Cal-Western to contact plaintiffs).

22          *Suelen v. Wells Fargo Bank, N.A.*, 2013 WL 1320697, at *4 (N.D. Cal. Apr. 1, 2013),

23   is distinguishable.  There the court held that the defendants had "not carried their heavy

24   burden of persuasion to show to a near certainty that joinder [of Cal-Western and Golden

25   West] was fraudulent."  *Id.* (internal citation and quotation marks omitted).  As in this case,

26   the plaintiff's allegations focused primarily on the conduct of Wells Fargo and she brought

27   all claims against "all defendants" collectively.  *Id.*  However, the court concluded that "even

28   if [plaintiff's] allegations do not meet the necessary pleading requirements now, Defendants

United States District Court
Northern District of California

have not shown, as they must, that she could not re-allege at least one of them to do so." *Id.*; *see also Burris v. AT&T Wireless, Inc.*, 2006 WL 2038040, at *2 (N.D. Cal. July 19, 2006) (remanding where defendant failed to demonstrate that the plaintiff would not be given leave to amend to cure the pleading deficiency regarding the alleged sham defendant). Because defendants had not proven that the plaintiff had "*no actual intention to prosecute* an action" against them, the court held that Cal-Western and Golden West were not sham defendants. *Suelen*, 2013 WL 1320697, at *4 (emphasis in original) (internal quotation marks omitted).

Likewise, in *Morrow v. Wells Fargo Bank*, 2012 WL 5471133, at *5 (N.D. Cal. Nov. 9, 2012), the court held that the defendants had not proven fraudulent joinder where plaintiff alleged that Cal-Western conspired with Wells Fargo. As in this case, the plaintiff brought her claims against "all defendants" and focused primarily on Wells Fargo's conduct. *Id.* However, under a conspiracy theory, "Cal-Western would be liable for the acts of Wells Fargo." *Id.* The court concluded that while the plaintiff's allegations did not meet Federal Rule of Civil Procedure 9(b) at that stage, the defendants failed to show that she could not re-allege them to do so. *Id.* at *6.

Here, in contrast to *Suelen* and *Morrow*, Plaintiff does not allege anything as to Cal-Western other than that it served as trustee. Further, Plaintiff's complaint alleges that Cal-Western is liable only because it failed to show the Note in violation of the UCC. Finally, in his Opposition he clarifies that the gist of his complaint is that Wells Fargo has not demonstrated its ownership of the Note; in other words, his dispute is with Wells Fargo. Accordingly, the Court concludes that Plaintiff has not and cannot state a claim against Cal-Western: Cal-Western is a sham defendant whose naming does not defeat diversity jurisdiction.

## II.     DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

### A.     Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint where the action fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

United States District Court
Northern District of California

Under Federal Rule of Civil Procedure 8(a)(2) a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 554 (internal citations and quotations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).

Generally, when a complaint is dismissed, "leave to amend shall be freely given when justice so requires." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010); *see* Fed.R.Civ.P. 15(a). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). This is particularly true where the plaintiff is proceeding pro se. *See id.* at 1131. Pro se pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In *Hebbe v. Pliler*, the Ninth Circuit held that courts must still liberally construe pro se filings post-*Iqbal* noting that "[w]hile the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." 627 F.3d 338, 342 (9th Cir. 2010) (internal quotations and citations omitted). Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**B.      Plaintiff Fails to State a Claim Against Wells Fargo**

Plaintiff alleges the same UCC claims against Wells Fargo as against Cal-Western. Just as those claims failed as a matter of law and established that Cal-Western had been fraudulently joined, so, too, must the claims fail against Wells Fargo. *See Knutson*, 358 F. Supp. 2d at 995 ("[B]ecause the expressed standard for fraudulent joinder is whether there is any possibility that a claim can be stated against the allegedly sham defendants, the standard is necessarily similar to that of motions to dismiss." (internal citations and quotation marks omitted)).

**1)      UCC Claims**

Plaintiff alleges that Defendants did not have the authority to foreclose on the Property and relies entirely on the UCC to make that argument. (Dkt. Nos. 1, Ex. A at ¶¶ 9, 30-45; 16 at 4.) Although he references TILA § 1641(f)(2), Plaintiff represents that he is not pleading TILA and RESPA causes of action and that the Home Owner's Loan Act, 12 U.S.C §§ 1461-1468 ("HOLA") does not apply. (Dkt. No. 16 at 3-4.) Plaintiff explicitly alleges that his "claim is based on violations of the UCC" and that "[u]ltimately, [he] relied on the clear language of the UCC to extract information regarding the claimed rights in the maker's note."[6] (Dkt. No. 16 at 4, 6.) As explained above, Defendants respond, correctly, that California Civil Code section 2924, not the UCC, governs nonjudicial foreclosures. *See Padayachi*, 2010 WL 4367221, at *3 ("Although Article 3 of the UCC governs negotiable instruments, it does not apply to nonjudicial foreclosure under deeds of trust."); *Moeller*, 25 Cal. App. 4th at 834 ("The comprehensive statutory framework established [by the California Civil Code] to govern nonjudicial foreclosure sales is intended to be exhaustive.").

**2)      Proof of Authority to Foreclose**

Even if the UCC applied, Plaintiff's assertion that "Wells Fargo has utterly failed or refused to show how it received, or if it has the rights claimed by showing it received such in each and every negotiation" (Dkt. No. 16 at 7) is belied by the judicially noticeable

---

[6] He cites to UCC § 5101, Letters of Credit, in his verified complaint. (*See* Dkt. No. 1, Ex. A ¶ 9.) However, he later alleges Wells Fargo violated sections 1201, 2102, 3105, 3201-04, 3301, 3301, 3309. (*See* Dkt. No. 1, Ex. A at ¶¶ 30-42, 44-45.)

United States District Court
Northern District of California

1   documents.  These documents include WSB's Certificate of Corporate Existence, issued by

2   the Office of Thrift Supervision ("OTS") (Dkt. No. 9, Ex. C); a letter from OTS approving

3   WSB's change in name to Wachovia (Dkt. No. 9, Ex. D); a letter to Wells Fargo from the

4   Comptroller of the Currency certifying the conversion of Wachovia to a national bank with

5   the name Wells Fargo Bank Southwest, N.A. ("WFBS"), and certifying the merger of WFBS

6   with Wells Fargo (Dkt. No. 9, Ex. F).

7        Plaintiff does not challenge the accuracy of the evidence chronicling the succession of

8   Wells Fargo from Wachovia and WSB.  He even acknowledges that "courts have recognized

9   the corporate succession from World Savings to Wells Fargo."  (Dkt. No. 16 at 4.)  Still, he

10  maintains that "the mortgage note is merely prima facie evidence the alleged holder, owner

11  or agent may have all the rights undiminished in and the authority to enforce."  (Dkt. No. 16

12  at 7.)  While Wells Fargo has previously been recognized as having the authority to

13  foreclose, Plaintiff suggests, "this does not mean that in all cases with varying fact patterns

14  Wells Forgo [*sic*] has undiminished rights and authority to foreclose."  (Dkt. No. 16 at 4.)

15  He later alleges that "Wells Fargo has utterly failed or refused to show how it received, or if

16  it has the rights claimed by showing it received such in each and every negotiation."  (Dkt.

17  No. 16 at 7.)  Essentially, Plaintiff is arguing that although it has been well established that

18  WSB converted to Wachovia and Wachovia later merged with Wells Fargo, it does not

19  automatically follow that the entitlement rights to his specific Note were appropriately

20  transferred in the process.

21       Such proof is not required by law.  In *Gomes v. Countrywide Home Loans, Inc.*, 192

22  Cal. App. 4th 1149, 1155 (2011), the plaintiff alleged that the company selling the property

23  in the nonjudicial foreclosure was not authorized to do so by the owner of the note.  *Id.* at

24  1155.  The court, however, held that a plaintiff may not use the courts to test whether the

25  entity initiating a nonjudicial foreclosure has the authority to do so.  *See id.*  The court

26  explained that "nowhere does [Civil Code section 2924] provide for a judicial action to

27  determine whether the person initiating the foreclosure process is indeed authorized, and we

28  see no ground for implying such an action."  *Id.*  Under section 2924(a)(1), a "trustee,

United States District Court
Northern District of California

mortgagee, or beneficiary, or any of their authorized agents" may initiate a nonjudicial foreclosure.  The court reasoned that "[b]ecause of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute."  *Id.* at 1154 (internal citations and quotation marks omitted).

The court emphasized that nonjudicial foreclosures are less expensive and more quickly remedied than judicial foreclosures.  *See id.*  Moreover, "the recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures."  *Id.*  The *Gomes* court did suggest, however, that a suit for wrongful foreclosure might survive if "the plaintiff's complaint identified a *specific factual basis* for alleging that the foreclosure was not initiated by the correct party."  *Id.* at 1156 (emphasis in original); *see also Lester v J.P. Morgan Chase Bank*, 2013 WL 633333 (N.D. Cal. Feb. 20, 2013) (holding that *Gomes* does not foreclose claim that includes a specific factual basis for alleging that lender did not have authority to foreclose); *Sacchi v. Mortgage Elec. Registration Sys., Inc.*, 2011 WL 2533029, *8 (C.D. Cal. June 24, 2011) ("Plaintiffs have alleged just such a specific factual basis—namely, that RCS was not yet the beneficiary under the DOT when it executed the Substitution of Trustee in favor of Fidelity."); *Tamburri v. Suntrust Mortg., Inc.*, 2011 WL 6294472, *14 (N.D. Cal. Dec. 15, 2011) ("Plaintiff alleges that the wrong parties issued the Notice of Default.  At the 12(b)(6) stage, given the factual uncertainties underlying the parties' arguments, Plaintiff's claim is sufficient to withstand a motion to dismiss.").

As in *Gomes*, Plaintiff's complaint does not identify a *specific factual basis* to challenge Defendants' authority to foreclose.  *See Gomes*, 192 Cal. App. 4th at 1156.  The absence of such allegations is an additional reason Plaintiff's claims must be dismissed.

### 3)     Preemption

Defendants also argue that to the extent Plaintiff's claims concern the transfer of the Note from WSB to Wachovia and then to Wells Fargo, they are preempted by HOLA.

United States District Court
Northern District of California

Plaintiff responds that his claims are not preempted, however, because HOLA applies only to federal savings associations and "does not apply once an entity becomes or merges into a national bank." (Dkt. No. 16 at 6.)  He contends that preempetion "is not some sort of asset that can be bargained, sold, or transferred."  *Id.*  Moreover, he insists, HOLA cannot apply to Wells Fargo because it is not a federal savings association.  *Id.*  Plaintiff's analysis, however, is incorrect.

"[P]reemption may be inferred when federal regulation in a particular field is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it."  *Bank of Am. v. City & County of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002) (internal quotations and citations omitted).  Federal regulations provide that HOLA "occupies the field" and therefore preempts state law dealing with the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages."  12 C.F.R. § 560.2(b)(10).  Moreover, courts have directly addressed the issue of where, as here, a foreclosure occurs after a merger between the original owner of the note and another company.  "Claims regarding foreclosures occurring post-merger are still generally covered by HOLA when the loan itself originated pre-merger."  *Castillo v. Wachovia Mortgage*, 2012 WL 1213296, *5 (N.D. Cal. Apr. 11, 2012); *see also* 9 Witkin, Summary of Cal. Law, Corporations § 198 (10th ed. 2005) (In a merger the surviving entity "succeeds to the rights, property, debts and liabilities, without other transfer.").

*DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119 (N.D. Cal. 2010) is illustrative.  The action concerned a note secured by WSB and a non-judicial foreclosure initiated by Wells Fargo.  At the time the loan was made to the plaintiffs, WSB was a "federally chartered savings bank organized and operating under HOLA."  *Id.* at 1126.  The court concluded that as such, the "same preemption analysis would apply to any alleged conduct after November 1, 2009, when the lender merged into a national banking association."  *Id.*;  *see also Appling v. Wachovia Mortgage, FSB*, 745 F. Supp. 2d 961, 971 (N.D. Cal. 2010) ("although Wells Fargo itself is not subject to HOLA and OTS regulation, [the] action is nonetheless governed by HOLA because Plaintiff's loan originated with a

15

federal savings bank and was therefore subject to the requirements set forth in HOLA and OTS regulations."); *Lopez v. Wachovia Mortg.,* 2010 WL 2836823, at *2 (N.D. Cal. July 19, 2010) (finding that although Wells Fargo is a federally chartered national bank, the action is governed by HOLA because the loan originated with World Savings Bank, which was regulated by OTS and subject to HOLA); *Parmer v. Wachovia*, 2011 WL 1807218, at *1 (N.D. Cal. Apr. 22, 2011) ("World Savings Bank, Wachovia, and its successor Wells Fargo, were subject to HOLA with respect to the origination and ownership of plaintiff's loan, and any claims asserted by plaintiff related to the servicing or processing of the loan or its sale to a subsequent purchaser, are all preempted.").

*Ahmed v. Wells Fargo Bank & Co.*, 2011 WL 1751415 (N.D. Cal. May 9, 2011) involved a substitution of trustee and a notice of foreclosure. Among his arguments, the plaintiff claimed that defendants failed to provide proof of their right to foreclose. *Id.* at *1. Three of the plaintiff's causes of action concerned "alleged defects in the procedure used to foreclose the subject property," including the claim that "defendants did not possess the promissory note." *Id.* at *3. The court concluded that such causes of action are preempted by HOLA, reasoning that "[t]hese claims are predicated upon alleged improprieties in the foreclosure procedure used by defendants and therefore affect lending because they involve the 'processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages,' as defined in 12 C.F.R. § 560.2(b)(10)." *Id.*; *see also Hague v. Wells Fargo Bank, N.A.*, 2012 WL 1029668, at *4 (N.D. Cal. Mar. 26, 2012) ("The wrongful foreclosure action is based on allegations regarding note ownership, securitization, and substitution of trustee, all defects in the foreclosure procedure used by Defendant and therefore within the ambit of HOLA preemption.").

Plaintiff's case is no different. To the extent that he argues that Wells Fargo failed to prove its authority to foreclose, such claims fall within the scope of those state laws specifically preempted by HOLA since they concern the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. §

16

560.2(b)(10).  As Plaintiff's claims address the transfer of enforcement rights as part of the purchase of his Note, they are preempted.

Finally, HOLA does not itself provide a private right to action.  *See Taylor v. Citizens Fed. Sav. & Loan Ass'n*, 846 F.2d 1320 (11th Cir. 1988) (holding that mortgagor had no private right of action for alleged violations of HOLA because HOLA was not enacted for special benefit of mortgagors and there was no indication of legislative intent to create private remedy); *Burns Int'l, Inc. v. W. Sav. & Loan Ass'n*, 978 F.2d 533, 536 (9th Cir. 1992) (agreeing with *Taylor* in holding that the creation of new federal common law causes of action is unnecessary for allegations of fraudulent misrepresentations in connection with a bank loan because the remedy under state law is adequate); *Bolden v. KB Home*, 618 F. Supp. 2d 1196, 1206 (C.D. Cal. 2008) (interpreting *Burns* to support finding of no private right of action under the HOLA); *cf. Amaral v. Wachovia Mortg. Corp.*, 2010 WL 2673766, at *11 (E.D. Cal. July 2, 2010) (declining to following *Burns* where decision involved subject matter jurisdiction based on alleged HOLA violation by defendant, not HOLA preemption).  Further, this Court has previously dismissed Section 2923.5 claims as preempted by HOLA with prejudice.  *See Giordano v. Wachovia Mort., FSB,* 2010 WL 5148428, at * 5 (N.D. Cal., Dec. 14, 2010) (dismissing Section 2923.5 claim without leave to amend as preempted by HOLA).

## CONCLUSION

For the reasons explained above, the Court finds that Cal-Western was fraudulently joined to this action.  As such, complete diversity exists and the Court has federal subject matter jurisdiction.  The Court also GRANTS Defendants' Motion to Dismiss with prejudice as to the UCC claims; Plaintiff cannot bring any claims under the UCC.

As Plaintiff has not previously amended his complaint, attempted to appear at oral argument, and is proceeding pro se, the Court grants him leave to amend to add new claims if he can do so in good faith in light of this Order.  Any such amended complaint shall be filed on or before May 17, 2013.  Plaintiff is warned that failure to file an amended complaint by the deadline will result in dismissal of his action.

1   This Order disposes of Docket No. 8.

2

3   **IT IS SO ORDERED.**

4

5   Dated:  April 23, 2013

6   _____
    JACQUELINE SCOTT CORLEY

7   UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

United States District Court
Northern District of California

15

16

17

18

19

20

21

22

23

24

25

26

27

28