IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT EVAN RIEGER,<br><br>    Plaintiff,<br><br>    v.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION; WELLS FARGO HOME MORTGAGE, INC.<br><br>    Defendant. | Case No.: 3:13-CV-00749 JSC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

In this mortgage foreclosure case, Defendant Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage, Inc., an internal division of Wells Fargo Bank (hereinafter collectively referred to as "Defendant"), brings a Motion to Dismiss Plaintiff's First Amended Complaint. (Dkt. No. 32). The Court previously dismissed Plaintiff's original complaint with leave to amend in part on April 23, 2013. (Dkt. No. 26.) In his First Amended Complaint ("FAC"), Plaintiff alleges four common law tort claims: (1) intentional interference with contractual relations; (2) unjust enrichment; (3) libel; and (4) conversion. (Dkt. No. 28.) He also re-alleges a statutory claim of wrongful foreclosure. (*Id.*) Because he fails to conform to the Court's previous order dismissing with prejudice his claims based on the UCC, and because

he fails to state claims upon which relief can be granted, the Court DISMISSES Plaintiff's amended complaint with prejudice.  Specifically, Plaintiff's amended claims are grounded on a request for actions and information that Defendant is not legally obligated to provide.  Further, Plaintiff continues to allege violations of the UCC, which the Court has barred with its previous order.  He also seeks to allege common law tort claims on the mistaken belief that they are not preempted by federal statute.  Finally, Plaintiff's factual allegations do not meet Rule 12(b)(6) pleading standards.

## FACTUAL & PROCEDURAL BACKGROUND

The following is compiled from Plaintiff's amended complaint and judicially noticeable documents attached to the pleadings.[1]

On July 27, 2005, Plaintiff secured a loan for $525,000.00 from World Savings bank, FSB.  (Dkt. No. 32, Exs. A-B.)  The loan was memorialized by a promissory Note and secured by a deed of trust recorded against 2697 Parkside Drive, Fremont, CA 94536 ("Property").  (Dkt. No. 32, Exs. A, B.)

In January of 2008, World Savings changed its name to Wachovia Mortgage, FSB.  It again changed its name to Wells Fargo Bank Southwest, N.A. in November 2009 before merging with Wells Fargo Bank, N.A.  (Dkt. No. 32, Exs. C, D, E, F.)  Plaintiff defaulted on his loan when he failed to make the payment due March 15, 2011.  A notice of default was recorded on February 21, 2012 with the Alameda County Recorder, listing the March 15, 2011 date of default and stating the delinquency of $33,844.34.  (Dkt. No. 32, Ex. G.)  The Notice of Default was executed by Cal-Western Reconveyance Corporation ("Cal Western") as "either the original trustee, the duly appointed substituted trustee, or acting as agent for the

---

[1] Pursuant to Federal Rule of Evidence 201, the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (i) is generally known within the trial court's territorial jurisdiction; or (ii) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Judicial notice is appropriate for "materials incorporated into the complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  Defendant requests judicial notice of Exhibits A-D, F-L, which are documents that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Therefore, the Court GRANTS Defendant's request for judicial notice of these documents.

trustee or beneficiary under [the] deed of trust." (Dkt. No. 33, Ex. G.) A substitution of trustee, substituting Cal-Western as trustee for Golden West Savings Association Service Co., was recorded with the Alameda County Recorder on July 16, 2012. (Dkt. No. 32, Ex. H.) A Note of trustee's sale was recorded with the Alameda County Reporter on July 20. (Dkt. No. 32, Ex. I.) The Property was sold at a trustee's sale on March 7, 2013. (Dkt. No. 32, Ex. L.)

Plaintiff alleges that upon receiving a copy of the February 21, 2012 "alleged" notice of default, he sent and faxed letters to "various Wells Fargo locations including [sic] and CWRC;" however, "none of the Defendants sent a response answering the detailed and specific questions regarding the Maker's Note and the alleged rights they were enforcing through a non-judicial foreclosure." (Dkt. No. 28 at 9.) On November 8, 2012, Plaintiff sent a letter "informing WFHM and CWRC not to sell my home until they have proven that they are holder and or agents of the holder . . . Each and every Defendant, failed to show under UCC § 3412 they was [sic] entitled to enforce the Note before Plaintiff's home was sold." (Dkt. No. 28 at 9.) Plaintiff claims there "is no document in any public record showing the Defendant[] w[as] entitled to enforce the Note through a non-judicial foreclosure." (Dkt. No. 28 at 11.)

Plaintiff, proceeding in this action pro se, filed his original complaint on January 22, 2013. Plaintiff alleged that Defendant failed to comply with "California Statutes, Commerce Code, Section 5, Uniform Commercial Code, § 5101 et. seq. ('UCC') as relating to his Note resulting in wrongful foreclosure and irreparable harm." (Dkt. No. 26 at 3; Dkt. No. 1, Ex. A at ¶ 9.) Defendant moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court granted Defendant's Motion to Dismiss with leave to amend in part, except as to Plaintiff's UCC claims. (Dkt. No. 26 at 17.) The Court specifically ruled that "Plaintiff cannot bring any claims under the UCC." (*Id.*)

In the FAC, Plaintiff alleges four common law tort claims: (1) intentional interference with contractual relations; (2) unjust enrichment; (3) libel; and (4) conversion. Finally, Plaintiff re-alleges a statutory claim of wrongful foreclosure.

3

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of the complaint when the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Pursuant to Federal Rule of Civil Procedure 8(a)(2), the complaint need only make "a short and plaint statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 554 (internal citation and quotations omitted).  For the purposes of ruling on a Rule 12(b)(6) motion to dismiss, the court should "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal citations and quotations omitted).

Federal Rule of Civil Procedure 15 dictates that leave to amend should be freely granted "when justice so requires."  Fed. R. Civ. P. 15.  "Although Rule 15(a) gives the trial court discretion over this matter, [the Ninth Circuit has] repeatedly stressed that the court must remain guided by 'the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities.'"  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Pro se plaintiffs are entitled to more generous leave to amend by the courts. *See Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  However, while Rule 15 is intended to provide ample opportunity to amend, if the complaint lacks a legally cognizable claim after amendment, the court must dismiss pursuant to the 12(b)(6) standard.  *See Brown v. Adidas Int.*, 938 F. Supp. 628, 632 (S.D. Cal. 1996) ("the court finds plaintiff's 'demur to complaint' void of any legal claim and dismisses it with prejudice from the complaint"); *Pellicci v. Cnty. of Los Angeles*, 172 F.3d 876 (9th Cir. 1999) (affirming dismissal of pro se plaintiffs' first amended complaint with prejudice).

**ANALYSIS**

As a threshold matter, the Court previously dismissed Plaintiff's UCC claims with prejudice. (Dkt. No. 26 at 17) (stating "Plaintiff cannot bring any claims under the UCC"). To the extent the amended complaint purports to reassert such claims, the claims are accordingly barred and must be dismissed.

**I.     Plaintiff's Common Law Claims Are Preempted By HOLA**

The Court previously held that to the extent Plaintiff bases his claims on Wells Fargo's failure to prove its authority to foreclose, "such claims fall within the scope of those state laws specifically preempted by HOLA since they concern the '[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.'" (Dkt. No. 26 at 26) (citing 12 C.F.R. § 560.2(b)(10)). Plaintiff acknowledges that the Court previously dismissed his first complaint as preempted under HOLA, but contends "HOLA is not applicable to the common law nature of Plaintiff's [amended] complaint." (Dkt. No. 36 at 9.) Plaintiff is incorrect. The Ninth Circuit has stated that when interpreting HOLA preemption statutes, carve-outs that are exempt from preemption are "intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption." *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008) (citing OTS, Final Rule, 61 Fed. Reg. 50951, 50966–67 (Sept. 30, 1996)). The Office of Thrift Supervision ("OTS") has clearly stated that claims relating to the "processing, origination, servicing, sale or purchase of, or investment or participation in mortgages" are preempted by HOLA. 12 C.F.R. § 560.2(b)(10). "Even state laws of general applicability, *such as tort*, contract, and real property laws, are preempted if their enforcement would impact thrifts in areas listed in § 560.2(b)." *Rivera v. Wachovia Bank*, 2009 U.S. Dist. LEXIS 68391, *6–7, 2009 WL 2406301 (S.D. Cal. Aug. 4, 2009) (citing *Silvas*, 514 F.3d at 1006) (emphasis added). Thus, the common-law nature of four of Plaintiff's five claims do not preclude HOLA preemption.

Plaintiff's five claims are premised on the same factual allegations as his previous complaint and once again challenge Wells Fargo's authority to enforce the Note; thus, HOLA preempts both the common law tort doctrines and the statutory wrongful foreclosure claim

1 Plaintiff pursues and requires dismissal of the entire action.[2]  This preemption provides an
2 avenue for the Court to dismiss Plaintiff's FAC for failure to state a claim upon which relief
3 can be granted under Rule 12(b)(6) without assessing each count individually.  Nevertheless,
4 the Court addresses each claim individually.

## II.     Count One: Intentional Interference With Contractual Relations

Plaintiff alleges that he "has a contractual relationship as the Maker of the Note with an unknown and unannounced holder." (Dkt. No. 28 at 14.)  Further, he alleges that Defendant had knowledge of the Maker's Note, and "interfered with the Plaintiff's efforts to learn who was the valid holder of his Note, if anyone." (Dkt. No. 28 at 14.)  As such, Plaintiff claims, Defendant is liable for intentionally interfering "with Plaintiff's contractual relations" with the unknown third party, "resulting in the sale of his home in a non-judicial foreclosure." (Dkt. No. 28 at 14.)  However, Plaintiff's claim is fatally flawed because he fails to allege a valid contract with a third party, and because inaction does not meet the standard for intentional acts designed to induce a breach.

To state a claim of intentional interference with contractual relations ("IICR"), a plaintiff must establish: (1) it has a valid and existing contract with a third party; (2) defendants had knowledge of the contract; (3) committed an intentional act designed to induce

---

[2] Plaintiff's FAC includes a new factual allegation involving Cal-Western's alleged wrongdoing; specifically, Plaintiff alleges that "[Cal-Western] did not have the standing or authority to [file the Notice of Default] since the Trustee was still Golden West Association Service Company." (Dkt. No. 28 at 8.)  To the extent Cal-Western's alleged wrongdoing affects Wells Fargo's liability in this action, Plaintiff's argument regarding the propriety of the Notice of Default is incorrect.  The Notice of Default is executed by Cal-Western as "either the original trustee, the duly appointed substituted trustee, *or* acting as agent for the trustee or beneficiary under [the] deed of trust." (Dkt. No. 33-1, Ex. G (emphasis added).)  Because Cal-Western need be merely the agent for the trustee of beneficiary, Plaintiff's argument that Cal-Western and Wells Fargo lacked the authority to pursue foreclosure since Cal-Western was not yet the substituted trustee when it filed the Notice of Default is unavailing.

Further, the Court's previous Order found that "Cal-Western was fraudulently joined to this action." (Dkt. No. 26 at 17. ("[Plaintiff's] dispute is with Wells Fargo . . . Cal-Western is a sham defendant")).  The parties proceed as if Cal-Western is still a party to this action, but it is not.  (*See* Dkt. No. 35. (Cal-Western's Motion for Joinder in Wells Fargo's Motion to Dismiss)).  The Court DENIES Cal-Western's Motion for Joinder.

a breach or disrupt the contractual relationship; (4) actual breach or disruption of the contract relationship occurred; and (5) damages were suffered as a result. *Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1203 (C.D. Cal. 2001).

      Plaintiff's claim fails to satisfy the first prong. Plaintiff premises his claim on the allegation that Defendant is not the actual holder of the Note and that his contractual relationship is actually with a third party who does hold the Note. As the Court explained in its previous Order, this allegation "is belied by the judicially noticeable documents" showing that Defendant received the enforcement rights under the Note. (Dkt. No. 26 at 13.) In light of these documents, Plaintiff's FAC fails to adequately allege that he has a valid and existing contract with a third party; Plaintiff's bald allegations are not plausible. *See Twombly*, 550 U.S. at 555. Thus, Plaintiff's assertion that Defendant obscured the identity of the actual holder of the Note, causing Plaintiff to breach the deed of trust with an unknown third party, is a non-sequitur.

      Moreover, Plaintiff alleges that Defendant has "ignor[ed] his requests" and "remained conspicuously silent regarding the Note's history and status." (Dkt. No. 36 at 5.) However, an IICR claim requires that Defendant have "committed an intentional act designed to induce a breach or disrupt the contractual relationship." *Sebastian*, 162 F. Supp 2d at 1203. "In order for Plaintiff to prove its cause of action for interference with a contractual relationship, it must prove by a preponderance of the evidence that, by its action, Defendant intentionally interfered with the contractual relationship alleged." *Gantry Constr. Co. v. Am. Pipe & Constr. Co.*, 49 Cal. App. 3d 186, 199 (1975). Defendant claims that allegations of inaction do not meet the burden requiring affirmative actions of intentional interference for this tort, and cites to *Gantry* as an example of when a court found that "the intent to provide a party to the contract with negative information is insufficient to support an IICR claim." (Dkt. No. 32 at 11.) Defendant has not presented, nor can the Court find, any case law in which a court squarely addresses whether inaction can give rise to an IICR claim, but many courts appear to take as a given that affirmative actions are required. *See Nat'l Right To Life Political Action Comm. v. Friends of Bryan,* 741 F. Supp. 807, 814 (D. Nev. 1990) ("At the heart of this action

7

is whether Plaintiff has proved intentional acts by Defendant intended or designed to disrupt Plaintiff's contractual relations."); *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 867 F. Supp. 920, 924 (D. Nev. 1994) *aff'd*, 78 F.3d 593 (9th Cir. 1996) (granting summary judgment "because the Court finds that Investors has failed to identify any acts taken by Joint Venture which induced Pacific Malibu and Silverton to breach the contract with Investors, and has not come forward with any evidence from which the Court could infer the existence of such acts on Joint Venture's part"). As such, the claim must fail as a matter of law and is dismissed with prejudice.

### III.    Count Two: Unjust Enrichment

This claim fails because California law does not recognize a stand-alone unjust enrichment claim. *See Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007) *aff'd sub nom. Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025 (9th Cir. 2009) (stating that a plaintiff "cannot seek restitution on the basis of unjust enrichment alone without any other legal basis because unjust enrichment is not a cause of action in and of itself"). "Unjust enrichment is not a cause of action, however, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies . . . It is synonymous with restitution." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) (internal citations and quotation marks omitted). Thus Plaintiff's unjust enrichment claim is dismissed with prejudice.

### IV.    Count Three: Libel Claim

The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage. *Taus v. Loftus* 40 Cal. 4th 683, 720, (2007). Section 45 of the California Civil Code defines libel as "a false and unprivileged publication by writing . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." An "essential element" of libel is that "the publication in question must contain a false statement of [f]act." *Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596, 600 (1976) (citing *Letter Carriers v. Austin*, 418 U.S. 264, 283-284 (1974) ("[B]efore the test of reckless or knowing falsity can be met, there must be a

false statement of fact.")).  Finally, "[t]he general rule is that the words constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint."  *Townsend v. Chase Bank USA N.A.*, 2009 WL 426393, at *3 (C.D. Cal. Feb. 15, 2009) *aff'd*, 445 F. App'x 920 (9th Cir. 2011).

Plaintiff's libel claim fails because he does not adequately allege that the foreclosure-related publications were false, and because he does not allege Defendant acted with malice, which is necessary to overcome Defendant's qualified privilege.

### A. Falsity

Plaintiff alleges that Defendant, "acting as the holder, or agents of such, caused to be published information [it] failed or refused to substantiate concerning the Maker and his Note . . . Plaintiff was libeled where the Defendant[] made false statements alleging that his mortgage account was delinquent to the public."  (Dkt. No. 28 at 16.)  Plaintiff further claims that as a result of the publication, Plaintiff's home was sold, harming his "financial and social reputation."  (Dkt. No. 28 at 16.)  While Plaintiff alleges that the foreclosure-related publications falsely stated that he was in default, his FAC does not explain why he believes he was not in default.  (Dkt. No. 36 at 11.)  He appears to premise his argument that he was not in default on the belief that Wells Fargo was not the holder of the Note, and thus had no authority to collect payments, declare a default, and pursue foreclosure.  (Dkt. No. 36 at 11.) (claiming that Defendant "did not have a right to publish [a default] because of the private nature of the Plaintiff's affairs until a proper default had been substantiated by a valid holder/owner of the Note")).  However, as already discussed, Plaintiff's claim that Wells Fargo was not authorized to enforce the Note is belied by judicially noticeable documents. (*See* Dkt. No. 32, Ex. G at 2.)  Therefore, as a threshold matter, Plaintiff has failed to allege an adequately specific factual basis for his libel claim under the Ninth Circuit's requirements. *See Townsend*, 445 F. App'x 920.  That alone would require the Court to dismiss his claim, but given his pro se status the Court would likely need to give him leave to amend.  However, his libel claim also fails because Defendant is protected with qualified privilege, and because his libel claim is preempted by federal law.

9

**B.     Privilege**

California law recognizes two types of privileged communications—communications which are absolutely privileged and communications which are qualifiedly or conditionally privileged. 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, §§ 498, 519, 585. If absolutely privileged, there is no liability even if the defamatory communication is made with actual malice. *Id.* at 609. If the privilege is only conditional or qualified, a finding of malice will prevent the communication from being found privileged. *Id*.

Civil Code section 47 codifies qualified privileges relating to the execution of non-judicial foreclosures. *Slaughter v. Friedman*, 32 Cal. 3d 149 (1982); *Cruey v. Gannett Co.*, 64 Cal. App. 4th 356, 367-68 (1998). California courts have held "that section 2924 deems the statutorily required mailing, publication, and delivery of notices in nonjudicial foreclosure, and the performance of statutory nonjudicial foreclosure procedures, to be privileged communications under the qualified common-interest privilege of section 47, subdivision (c)(1)." *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 333 (2008); *see also In re Cedar Funding, Inc.*, 08-52709 CN, 2012 WL 3229148 at *6 (Bankr. N.D. Cal. Aug. 6, 2012) ("Most courts in California take the *Kachlon* approach. This court also elects to follow *Kachlon*'s reasoning."); *Boggs v. Wells Fargo Bank NA*, 2012 WL 2357428, at *4 (N.D. Cal. Jun 14, 2012); *Smith v. Quality Loan Service Corp.*, 2012 WL 202055, at *3 (E.D. Cal. Jan 23, 2012); *Consumer Solutions REO, LLC, v. Hillery*, 658 F. Supp. 2d 1002, 1018 (N.D. Cal. 2009).

Wells Fargo is entitled to qualified immunity as a beneficiary under the deed of trust when publishing and delivering notices, as well as other attendant procedures in the non-judicial foreclosure process. Courts have interpreted section 47 qualified privilege to require "more than general allegations of malice . . . [a]ctual facts of malice must be alleged or be apparent from the communications themselves." *Martin v. Kearney*, 124 51 Cal. App. 3d 309, 312 (1975). "Malice is defined as actual malice, meaning that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of

the plaintiff's rights." *Kachlon*, 168 Cal. App. 4th at 336. Plaintiff has failed to allege that Wells Fargo was acting with malice when it conducted the foreclosure process, and therefore fails to pierce the section 47 qualified privilege.

Because Plaintiff's libel claim lacks essential elements, fails to allege sufficient malice to pierce Defendant's qualified privilege, and is preempted by federal law, the claim is dismissed without leave to amend.

## V.   Conversion

Plaintiff's conversion claim states that although Plaintiff was the owner of his property, Defendant sent notices of default and, when Plaintiff sent letters requesting that "unknown persons identify their role in relation to his Note," Defendant refused to identify itself or its relationship to the Note. (Dkt. No. 28 at 17.) As a result, Plaintiff alleges, he was "harmed when the home was sold depriving him of his rights and enjoyment of his property." (Dkt. No. 28 at 17.) Defendant correctly contends that "it is generally acknowledged that conversion is a tort that may be committed only with relation to personal property and not real property." *Munger v. Moore*, 11 Cal. App. 3d 1, 7 (1970); *see also Graner v. Hogsett*, 84 Cal. App. 2d 657, 662 (1948); *Reynolds v. Lerman*, 138 Cal. App. 2d 586, 591 (1956); 48 Cal. Jur. 2d, Trover and Conversion, § 8. Plaintiff responds that his claims "are founded on conversion of the maker's Note and deed of trust—not his real property." (Dkt. No. 36 at 12.)

There "may be a conversion of intangibles represented by documents, such as bonds, notes, bills of exchange, stock certificates, and warehouse receipts." 5 Witkin, Summary 10th (2005) Torts, § 702, at 1025. However, a court in the Ninth Circuit has already addressed a case in which the plaintiff alleged conversion of his Maker's Note, and concluded that "[t]his does not state a claim for conversion." *Bukhari v. Direct Mortgage Corp.*, 2010 WL 2521750, at *6 (D. Nev. June 16, 2010). The plaintiff in *Bukhari*, proceeding pro se, claimed that "his lender converted funds from him by selling his mortgage into the secondary market." *Id.* The court explained, "[p]laintiff did not own the right to be paid under the promissory Note. By his own allegations, he was the maker of the promissory Note, not the payee or a subsequent endorsee. As to the plaintiff, the promissory Note therefore represented an obligation, not

11

property or a right, and it is legally impossible for any action with respect to the promissory Note to constitute conversion of anything owned by Plaintiff." *Id.* The same is true here. Furthermore, the claim is preempted by HOLA as stated above, and therefore cannot proceed. *See Copeland-Turner v. Wells Fargo Bank*, 800 F. Supp. 2d 1132 (D. Or. 2011) (holding that HOLA preempted mortgagor's state-law conversion claims and dismissing the action). The Court therefore dismisses Plaintiff's conversion claim with prejudice.

## VI.     Wrongful Foreclosure

Plaintiff's statutory wrongful foreclosure claim is predicated on the same facts as his other four counts—that Defendant sent notices of default, to which Plaintiff sent a series of letters "seeking [Defendant's] proof of authority to declare a default." (Dkt. No. 28 at 17.) Because Defendant failed to identify itself or its relationship to the Maker's Note, Plaintiff claims that it "lacked authority to sell his home and failed or refused to demonstrable [sic] a nexus with the Plaintiff sold his home, depriving him of his rights and enjoyment of his property." (Dkt. No. 28 at 18.)

In its previous Order, the Court explained that California law does not require Defendant to produce the Note when executing a non-judicial foreclosure process. (Dkt. No. 26 at 8-9); s*ee also Jacobs v. Bank of Am., N.A.*, 2011 WL 250423 *5 (N.D. Cal. Jan. 25, 2011) ("To the extent plaintiff's claim for wrongful foreclosure is based on her theory that defendants do not hold the promissory Note, defendants' motion to dismiss is granted without leave to amend. As noted above, California law does not require possession of the Note as a precondition to non-judicial foreclosure under a deed of trust."); *Davenport v. Litton Loan Servicing, LP,* 725 F. Supp. 2d 862, 880 (N.D. Cal. 2010).

When dismissing Plaintiff's original complaint, the Court recognized that "a suit for wrongful foreclosure might survive if 'the plaintiff's complaint identified a *specific factual basis* for alleging that the foreclosure was not initiated by the correct party.'" (Dkt. No. 26 at 14.) (citing *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1155 (2001)). This Court held that Plaintiff's original complaint "d[id] not identify a *specific factual basis* to challenge Defendant's authority to foreclose." (Dkt. No. 26 at 14.) In his amended

12

complaint, Plaintiff alleges that "Defendant's [sic] failed to show [it] had the authority to declare a default," and therefore lacked authority to sell his home. (Dkt. No. 28 at 18.) However, Plaintiff fails for the second time to allege a sufficiently specific factual basis for his claim that Defendant lacked the authority to foreclose on his home. *Compare Gomes*, 192 Cal. App. 4th at 1156 ("Gomes has not asserted any factual basis to suspect that MERS lacks authority to proceed with the foreclosure. He simply seeks the right to bring a lawsuit to find out whether MERS has such authority.") *with Sacchi v. Mortgage Elec. Registration Sys. Inc.*, 2011 WL 2533029, at *8 (C.D. Cal. June 24, 2011) ("Plaintiffs have alleged just such a specific factual basis—namely, that RCS was not yet the beneficiary under the DOT when it executed the Substitution of Trustee in favor of Fidelity."). Similar to the fishing expedition the *Gomes* court rejected, Plaintiff states, "if the Defendant[] w[as] to provide verifiable proof before this Honorable Forum which shows [it] w[as] the Holder with an undiminished right to enforce . . . Rule 26(a) required disclosures should bring rapid resolution to this matter." (Dkt. No. 36 at 5.) Plaintiff states that his "tort [claims] are centered on the fact that the Defendant has refused to show [it] ha[s] any nexus to the Plaintiff's Note," not factually specific allegations that the Defendant did in fact lack the authority to execute the Note. (Dkt. No. 36 at 8.)

Thus, the Court once again grants Defendant's motion to dismiss Plaintiff's wrongful foreclosure claim.

**CONCLUSION**

The Ninth Circuit has interpreted Rule 15(b) to require a district court to "grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Particularly in the case of pro se litigants, "leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) (internal quotation marks omitted).

However, "leave to amend may be denied if it appears to be futile or legally insufficient." *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986). "It is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile." *Klamath–Lake Pharmaceutical Ass'n v. Klamath Medical Serv. Bureau*, 701 F.2d 1276, 1292–93 (9th Cir.); *see also Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990). Additionally, courts may dismiss with prejudice when plaintiffs have failed to plead with the requisite particularity after "repeated opportunities." *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (affirming dismissal of plaintiff's fifth amended complaint with prejudice); *Wright v. Grannis*, 2011 WL 7478282 (S.D. Cal. Sept. 14, 2011) ("dismissal with prejudice is appropriate where a plaintiff has repeatedly failed to cure deficiencies in his pleading"); *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 675–76 (2d Cir. 1991) (third amended complaint dismissed with prejudice). The Ninth Circuit has affirmed a district court's decision to dismiss with prejudice when "[d]espite repeated opportunities given them by the district court, the plaintiffs have failed to plead their claims . . . with the requisite particularity." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

The Court dismissed Plaintiff's original complaint in a detailed, 18 page order that specifically explained why his claim failed and provided opportunity to amend. His amended complaint lacks a legally cognizable claim, largely disregards the Court's previous order, and does not allege a sufficiently specific factual basis to proceed. In particular, Plaintiff's pleadings continue to rely on his belief that Defendant is not the actual holder of the Note—an allegation that provides him no cause of action in this case. Moreover, federal law preempts both his common law and previously barred statutory claims, and Plaintiff has not presented a factual basis that would preclude preemption. Therefore, his claim is dismissed with prejudice because amendment would be futile and because the Court has given him ample opportunities to cure his complaint. The Court GRANTS Defendant's Rule 12(b)(6) Motion to Dismiss each claim without leave to amend.

**IT IS SO ORDERED.**

Dated: July 23, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE